UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| PRENTICE WHEATLEY,<br><br>Petitioner,<br><br>v.<br><br>Commissioner TOM ROY,<br><br>Respondent. | Civil No. 12-1950 (DWF/AJB)<br><br>**REPORT AND RECOMMENDATION** |

Prentice Wheatley, Minnesota Correctional Facility - Oak Park Heights, 5329 Osgood Avenue North, Stillwater, Minnesota, 55082, Petitioner, pro se.

Linda M. Freyer, Assistant Hennepin County Attorney, 300 South Sixth Street, Government Center Suite C-2000, Minneapolis, Minnesota, 55487, for Respondent.

ARTHUR J. BOYLAN, Chief United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Prentice Wheatley for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) Respondent has filed a response, (Docket Nos. 8-11), contending that the petition should be dismissed, and Petitioner has filed a Reply Memorandum with supporting materials, (Docket Nos. 12-14). The case has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Petitioner's habeas corpus petition be DENIED, and that this action be DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

In April 2007, Petitioner beat or whipped his fourteen-year-old daughter with an extension cord and a belt. The daughter, SW, reported her injuries to a school social

worker, who in turn reported the matter to the police. On May 29, 2007, Petitioner was charged with third degree assault. (Respondent's Appendix, [Docket No. 10], [hereafter "RA"], pp. 1-2.) Sometime thereafter, SW was examined by a medical doctor named Mark Hudson. After examining SW, Dr. Hudson reported that "scars caused by the beating will remain indefinitely and could disfigure her for the rest of her life." (Id., p. 5.) Based on Dr. Hudson's report, the criminal complaint against Petitioner was amended to include an additional charge of first degree assault. (Id., pp. 4-6.) The amended complaint is dated October 2, 2007.

Petitioner's case came before the trial court "for trial on stipulated facts" on November 21, 2007. (Id., p. 8.) The trial court found that Petitioner had waived his right to present testimony, his right to require prosecution witnesses to testify in open court and be subject to cross-examination, and his right to have the charges against him decided by a jury. (Id.) The stipulated facts presented to the trial court included a medical report, (namely Dr. Hudson's report), and photographs of SW's injuries that were taken on the day of the trial. (Id.) The trial court found that "[p]hotographs taken on the day of trial, seven months later, [i.e., seven months after Petitioner beat SW] show that scars remain on her arms, her legs, her buttocks, and her shoulders." (Id., p. 9.) The trial court further found that "[t]he remaining scars are pronounced, apparent, and easily visible," and "[t]hey appear to be, and in the opinion of medical professionals are, permanent." (Id.) Based on those findings, the trial court determined that "[t]he scars are a permanent disfigurement within the meaning of Minn.Stat. § 609.02." (Id.)

Petitioner urged the trial court to find him not guilty of first degree assault, because he had "accepted responsibility for his actions," he was "trying to correct S.W.'s bad

2

behavior when he beat her," and he had spared SW from having to testify at his trial. (Id.) Petitioner further argued that he should be acquitted on the first degree assault charge, because SW's injuries were "much less severe than those suffered by the typical victim of First Degree Assault." (Id., p. 10.) However, the trial court rejected Petitioner's arguments, and found him guilty of first degree assault. The "lesser offense of Assault in the Third Degree" was "merge[d]" with the first degree assault conviction. (Id.)

Petitioner was later sentenced to 125 months in state prison. He is presently serving his sentence at the Minnesota Correctional Facility at Oak Park Heights, Minnesota.

After Petitioner was convicted and sentenced, he filed a direct appeal. At Petitioner's request, the appeal was stayed so he could pursue a state post-conviction motion. After Petitioner's post-conviction motion was denied, he asked the Minnesota Court of Appeals to extend the stay of his still-pending appeal, so he could pursue a second post-conviction motion. Petitioner's second request for a stay was denied, and his appeal eventually was dismissed without any ruling on any claims, because he failed to comply with a briefing order entered by the Court of Appeals.

While Petitioner's appeal was still pending, he did file a second post-conviction motion, but that motion was withdrawn before it was adjudicated. In December 2009, Petitioner filed a third post-conviction motion, claiming that (i) the criminal charges that were filed against him were improper, (ii) he was deprived of his constitutional right to cross-examine Dr. Hudson, and (iii) he was deprived of his constitutional right to effective assistance of counsel.[1] Petitioner's third post-conviction motion was denied on the merits

---

[1] Petitioner's third post-conviction motion is reproduced at RA pp. 11-28.

in March 2010.[2]

Petitioner later filed two more motions in the trial court, which were treated together as a fourth post-conviction motion.[3] In that motion, Petitioner contended that the trial court "erred in its convictions of 1st and 3rd degree assault for the same crime." (RA, p. 60.) Petitioner's fourth post-conviction motion was denied on the merits on July 27, 2010.[4]

In September 2010, Petitioner filed his fifth post-conviction motion. In that motion, Petitioner asked the trial court to conduct an evidentiary hearing, so he could present new evidence that purportedly would have shown that SW did not really suffer any permanent disfiguring injuries.[5] Petitioner sought to introduce testimony from SW's mother, who worked as a "medical assistant" at a dermatology clinic. According to Petitioner, SW's mother would have testified that SW no longer had any remaining visible scars as a result of the beating inflicted by Petitioner three and a half years earlier. (It will be recalled that Petitioner assaulted SW in April 2007, and he filed his fifth post-conviction motion in September 2010.) Petitioner's motion identified SW's mother as an "expert witness," who supposedly would have been able to show that SW never had any permanent injuries. To support that proposition, Petitioner filed an "affidavit" with his motion, which purportedly shows that "[t]his expert witness... [i.e., SW's mother], determined without question, that

---

[2] The trial court's memorandum opinion and order denying the third post-conviction motion is reproduced at RA pp. 38-46.

[3] The fourth post-conviction motion is reproduced at RA pp. 47-67.

[4] The trial court's memorandum opinion and order denying the fourth post-conviction motion is reproduced at RA pp. 68-74.

[5] The fifth post-conviction motion, including legal arguments, an amendment, and supporting evidentiary materials, is reproduced at RA pp. 75-95.

4

the scars from 2007 were not permanent, and that they never were." (RA p. 80.)[6] According to Petitioner, SW's mother would have provided testimony at an evidentiary hearing that would have disproved one of the essential elements of his conviction for first degree assault – i.e., that SW suffered a "permanent disfigurement."[7] However, the trial court refused to conduct an evidentiary hearing, and Petitioner's fifth post-conviction motion was denied on November 9, 2010.[8]

As noted above, Petitioner's <u>third</u> post-conviction motion was denied in March 2010. Petitioner attempted to appeal that ruling in a Notice of Appeal that was filed on September 17, 2010. The Minnesota Court of Appeals found that the Notice of Appeal was untimely with respect to the <u>third</u> post-conviction motion, but further found that the Notice of Appeal could be treated as a timely appeal with respect to the <u>fourth</u> post-conviction motion, (which had been denied by the trial court in July 2010). Thus, the Court of Appeals concluded that the claims litigated in the third post-conviction motion could <u>not</u> be reviewed on appeal, but the claims litigated in the fourth post-conviction motion could be reviewed on appeal. (See Order of the Minnesota Court of Appeals dated October 14, 2010, [RA pp. 96-98].)

Petitioner subsequently filed a timely appeal from the denial of his <u>fifth</u> post-

---

[6] The so-called expert witness affidavit is reproduced at RA pp. 87-90. It appears to actually be a transcript of a telephone conversation between SW's mother and a person identified as Petitioner's "personal assistant."

[7] Under Minnesota law, a conviction for first degree assault requires proof of "great bodily harm." Minn.Stat. § 609.221, subd. 1. "Great bodily harm" is "bodily injury which creates a high probability of death, or which causes <u>serious permanent disfigurement</u>, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ <u>or other serious bodily harm</u>." Minn.Stat. § 609.02, subd. 8 (emphasis added).

[8] The order denying the fifth post-conviction motion is reproduced at RA pp. 99-105.

5

conviction motion, (requesting a hearing to produce "new evidence" regarding SW's injuries), and that appeal was consolidated with the appeal on the fourth post-conviction motion. On June 20, 2011, the Minnesota Court of Appeals rendered a decision upholding the trial court's rulings on both the fourth and fifth post-conviction motions. Wheatley v. State, Nos. A10-1669 and A10-2234 (Minn.App. 2011), 2011 WL 2437460 (unpublished opinion). The Minnesota Supreme Court denied Petitioner's application for further review on September 20, 2011. Id.

After the Minnesota state courts failed to overturn Petitioner's conviction, (in five separate post-conviction proceedings), he filed his present application for a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. The current petition lists two grounds for relief. In "Ground One," Petitioner claims that he was denied due process when the trial court refused to conduct an evidentiary hearing on the matters raised in his fifth state post-conviction motion. Petitioner contends that he should have been allowed to present testimony from his "expert witness," (SW's mother), to show that SW did not suffer any permanent disfiguring injuries. (Petition, [Docket No. 1], p. 6.) In "Ground Two," Petitioner claims that he was denied due process, because he was "improperly charged and convicted" for first degree assault, rather than "malicious punishment of a child." (Id., p. 8.) Petitioner contends that the Minnesota state legislature intended that parents who inflict injuries on their children should be prosecuted under the "more specific statute," (i.e., "malicious punishment of a child"), rather than the "more general statute," (i.e., assault).

After Respondent filed an answer addressing the two claims presented in the petition, Petitioner filed a reply memorandum that appears to include an entirely new claim that is not listed in his petition – a claim of ineffective assistance of counsel. (See

6

"Petitioner's Reply To State's Response To His Petition For Writ Of Habeas Corpus Supplemental Brief," [Docket No. 12], [hereafter "Reply"], pp. 19-26.) Because no such claim was listed in the petition, and Respondent has had no chance to address it, the Court questions whether the claim is properly reviewable here. However, the Court will give Petitioner the benefit of the doubt, and will consider whether he has presented a viable ineffective assistance of counsel claim.

For the reasons discussed below, the Court finds that none of Petitioner's claims for habeas corpus relief can be sustained.[9]

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern this Court's substantive review of Petitioner's habeas corpus claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

[9] Respondent has argued that some of Petitioner's claims have been procedurally defaulted, because they were not fairly presented to the Minnesota Supreme Court in accordance with state procedural rules. Petitioner contends that any such procedural default should be excused based on his showing of "cause and prejudice" or "actual innocence." (See Reply, pp. 3-7.) Although Petitioner's opposition to the procedural default argument is not very persuasive, the Court will nevertheless address his habeas corpus claims on the merits. See Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) (en banc) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"), cert. denied, 528 U.S. 846 (1999); Tokar v. Bowersox, 198 F.3d 1039, 1049 (8th Cir. 1999) ("[s]ince we find the issue can be easily resolved on the merits, we need not delve into all of [the petitioner's] excuses for his procedural default"), cert. denied, 531 U.S. 886 (2000); Chambers v. Bowersox, 157 F.3d 560, 564, n. 4 (8th Cir. 1998) ("[t]he simplest way to decide a case is often the best"), cert. denied, 527 U.S. 1029 (1999).

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (Emphasis added.)

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

<u>Id</u>. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

<u>Id</u>. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was <u>objectively unreasonable</u>.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

<u>Id</u>. at 409, 411 (emphasis added).

A writ of habeas corpus can also be granted if the state courts' resolution of a

8

prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court record.

Needless to say, a federal court is not allowed to conduct its own de novo review of a state habeas petitioner's claims. Yarborough v. Alvarado, 541 U.S. 652, 665 (2004) ("[w]e cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter"). "AEDPA ... imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt'...." Renico v. Lett, 130 S.Ct. 1855, 1862 (2010) (citations omitted). Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams. The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S.Ct. 770, 787 (2011).

With these principles in mind, the Court considers whether Petitioner is entitled to a writ of habeas corpus on any of his current claims for relief.

### III. DISCUSSION

    A. Ground One: Denial of Evidentiary Hearing on Post-Conviction Motion

Petitioner initially claims that the state trial court violated his constitutional right to due process, by refusing to conduct an evidentiary hearing on his fifth post-conviction motion. If such a hearing had been allowed, Petitioner purportedly would have presented testimony, and perhaps photographic evidence, which allegedly would have shown that SW did not suffer any permanent scars as a result of the beating inflicted by Petitioner. The evidence that Petitioner wanted to present supposedly would have disproved an essential element of his conviction for first degree assault, namely that the victim suffered "great bodily harm." (See n. 7, supra.)

The state trial court held that Petitioner was not entitled to an evidentiary hearing to present his "new evidence" pertaining to SW's injuries, (RA p. 105), and the Minnesota Court of Appeals agreed that an evidentiary hearing was not warranted. Wheatley, 2011 WL 2437460 at *3. That ruling cannot be overturned here, unless Petitioner has shown that it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner has not met that burden.

Petitioner has not identified any Supreme Court decision holding, or implying, that a state prison inmate has a constitutional right under the due process clause (or otherwise) to have an evidentiary hearing in a state post-conviction proceeding. Furthermore, the Eighth Circuit Court of Appeals has frequently said that the federal Constitution does not prescribe any rights that must be provided to state prisoners during state post-conviction proceedings. "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal

habeas petition." Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.), cert. denied, 495 U.S. 936 (1990).[10]  Thus, any error that might occur during the course of a post-conviction proceeding "is not a constitutional error that could justify granting an application for a writ of habeas corpus." Bells-Bey v. Roper, 499 F.3d 752, 756 (8th Cir. 2007), cert. denied, 553 U.S. 1035 (2008).  See also Williams v. State of Mo., 640 F.2d 140, 143-44 (8th Cir.) ("[e]rrors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings"), cert. denied, 451 U.S. 990 (1981); Conner v. Director of Div. of Adult Corrections, 870 F.2d 1384, 1386 (8th Cir.) ("the district court is correct to point out that '[t]his court lacks jurisdiction under 28 U.S.C. § 2254 to hear complaints regarding the propriety of state postconviction relief proceedings'"), cert. denied, 493 U.S. 953 (1989); Mitchell v. Wyrick, 727 F.2d 773, 774 (8th Cir.) ("§ 2254 gives federal courts jurisdiction to determine the constitutionality of a state criminal conviction, but does not authorize review of state postconviction relief proceedings"), cert. denied, 469 U.S. 823 (1984); Smith v. Lockhart, 882 F.2d 331, 334 (8th Cir. 1989) (a state prisoner "cannot establish the unconstitutionality of his custody as required under 28 U.S.C. § 2254(a) merely by attacking the [state] post-conviction review process either in general or as applied in his case"), cert. denied, 493 U.S. 1028 (1990).

---

[10] The Fourteenth Amendment says that a person cannot be deprived of his or her liberty without being afforded due process.  However, once a person has been convicted and sentenced to prison, and the conviction and sentence have become final on direct review, the constitutional requirement of due process has been satisfied, and the person has been constitutionally deprived of his or her liberty.  If the state gratuitously affords the person a subsequent (not constitutionally required) opportunity to challenge his or her conviction in a post-conviction proceeding, the due process clause does not impose any requirements on how that proceeding must be conducted.

In sum, the Minnesota Court of Appeals rejected Petitioner's bid for an evidentiary hearing that would have allowed him to present new evidence to support his fifth post-conviction motion. That state court ruling cannot be overturned here, unless Petitioner has shown that it is contrary to, or involves an unreasonable application of, a federal constitutional rule established by a Supreme Court decision. Because there is no such decision, Petitioner cannot be granted a writ of habeas corpus on his first ground for relief.

B. Ground Two: Charge And Conviction For Assault Rather Than "Malicious Punishment"

In Ground Two, Petitioner contends that he should have been charged, and ultimately convicted, only under a Minnesota state statute referred to as "Malicious Punishment of a Child," Minn.Stat. 609.377.[11] According to Petitioner, if a criminal defendant's actions violate two or more different statutes, the defendant <u>must</u> be charged, (and can only be convicted), under the "more specific" statute. As explained by Petitioner:

> "The terms of a more specific statute take precedence over the terms of the general statute where both statutes speak to the same concern...."

(Reply, p. 8.) Starting from this premise, Petitioner contends that because he is the victim's father, he should have been charged under Minnesota's "more specific" malicious punishment statute, rather than the "more general" first and third degree assault statutes.

Federal courts cannot review state court interpretations of state statutes, unless

---

[11] Minn.Stat. § 609.377, sud. 1 states:

"A parent, legal guardian, or caretaker who, by an intentional act or a series of intentional acts with respect to a child, evidences unreasonable force or cruel discipline that is excessive under the circumstances is guilty of malicious punishment of a child and may be sentenced as provided in subdivisions 2 to 6."

12

some constitutional issue is implicated. See Evenstad v. Carlson, 470 F.3d 777, 782 (8th Cir. 2006) ("we lack authority to review the Minnesota state courts' interpretation and application of state law"). Although Petitioner says his statutory construction claim is based on the federal Constitution's due process clause, he has cited no legal authority to support that notion.[12] Petitioner's reply memorandum does cite several U.S. Supreme Court cases, (Reply, pp. 7-19), but none of them supports his supposed due process claim. The cases cited by Petitioner are not habeas corpus cases involving federal constitutional issues; they are federal criminal cases involving only the interpretation and construction of federal statutes. Those cases do not address federal constitutional issues. In fact, the two cases on which Petitioner relies most heavily – Busic v. United States, 446 U.S. 398 (1980), and Simpson v. United States, 435 U.S. 6 (1978) – do not even mention the term "due process."

Petitioner apparently believes that the Fourteenth Amendment's due process clause requires state courts to interpret and construe state criminal codes in the same way that federal courts interpret and construe the federal criminal code. However, Petitioner has failed to support that proposition. Petitioner has not identified any Supreme Court decision showing that the Minnesota state courts are constitutionally required to follow the rules of federal statutory construction that are discussed in his reply memorandum. See Butler v. O'Brien, 663 F.3d 514, 519 (1st Cir. 2011) ("We quickly dispatch the argument that the state

---

[12] When Petitioner raised his statutory construction claim in state court, (in his third post-conviction motion), he never mentioned a single federal court case, but relied entirely on state court cases. (RA pp. 16-22.) It therefore appears that Petitioner never fairly presented his current federal law arguments to the state courts, which would mean that those arguments have been procedurally defaulted. However, the Court has already determined that any such procedural default will be overlooked, because it is clear that Petitioner's current claims are not sustainable on the merits in any event. (See n. 9, supra.)

13

court was required by clearly established Supreme Court case law to apply the rule of lenity or any other particular canon of statutory construction.... Federal courts have no power to dictate to state courts rules of statutory construction or mandate adoption of the rule of lenity."), cert. denied, 132 S.Ct. 2748 (2012). Therefore, Petitioner cannot be granted a writ of habeas corpus on his second ground for relief.

    C. Ineffective Assistance Of Counsel

Although Petitioner presented only two grounds for relief in his petition, the Court has considered a third claim that Petitioner appears to be trying to raise, (very belatedly), in his reply memorandum. There, Petitioner contends that he was deprived of his constitutional right to effective assistance of counsel, because his attorney did not adequately challenge the State's evidence pertaining to the severity of SW's injuries. The State cited Dr. Hudson's report to show that SW was permanently disfigured, and Petitioner was therefore guilty of first degree assault. Petitioner now contends that his attorney did not provide adequate legal assistance, because the attorney did not challenge the admissibility of Dr. Hudson's report. (See Reply, pp. 19-26.)

As Petitioner correctly recognizes, his ineffective assistance of counsel claim must be decided in accordance with the Supreme Court's opinion in Strickland v. Washington, 466 U.S. 668 (1984). There the Court held that a party claiming ineffective assistance of counsel must establish (1) that his attorney's performance "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 688, 694; see also Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir.), cert. denied, 519 U.S. 956 (1996). When evaluating whether a criminal defendant received reasonably competent

14

legal representation, a court must be mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance." Strickland, 466 U.S. at 689. "Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight." Garrett, 78 F.3d at 1301.

In order to satisfy the second Strickland requirement, a habeas petitioner must make "a showing of prejudice sufficient to undermine confidence in the outcome of the trial." Id. at 1302. More specifically, the petitioner must demonstrate that there is a "reasonable probability that the proceeding would have ended in a different result without counsel's errors." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995). "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter 131 S.Ct. 770, 792 (2011) (citing Strickland, 466 U.S. at 693).

In this case, Petitioner has failed to satisfy either of the Strickland requirements. Petitioner criticizes his attorney for not opposing the admission of Dr. Hudson's medical report, but he has failed to explain how his attorney could have kept that report from being admitted. Perhaps Petitioner believes that Dr. Hudson should have been required to take the witness stand and authenticate his report, but that would have merely delayed the inevitable introduction of the report. Moreover, if Dr. Hudson had personally testified about SW's injuries, he might have provided evidence that was even more damaging then the report itself. Because Petitioner has failed to show that his attorney could have eliminated Dr. Hudson's medical opinion altogether, he has failed to show that his attorney was incompetent, or that he was prejudiced, because his attorney did not challenge the admission of Dr. Hudson's report.

The Court further notes that Petitioner's ineffective assistance of counsel claim is

fatally undermined by Petitioner's own candid admission that his attorney made every reasonable effort to defend him against the first degree assault charge. In Petitioner's fifth state post-conviction motion, he informed the trial court that his "new evidence" regarding SW's injuries was previously unavailable, and that his attorney's "failure to learn of the evidence prior to trial was not due to a lack of diligence." (RA p. 83.) Petitioner further stated that his attorney made "a continuous effort to convense [sic] the trial court that the scars were not going to be permanent and that this was not a 1st degree assault." (Id.) Thus, Petitioner has effectively acknowledged that it would have been impossible to show, at the time of his trial, that SW's injuries did not constitute a "permanent disfigurement." (Id.)

Again, Petitioner has not shown that his attorney could have successfully opposed the admission of Dr. Hudson's report, and he has therefore failed to show that he could have avoided a first degree assault conviction if his attorney had tried to block the admission of that report. Moreover, Petitioner has candidly acknowledged that his attorney diligently tried to convince the trial court that SW's injuries were not permanent. In short, Petitioner has not shown that his attorney made any unreasonable mistake that probably affected the outcome of his trial. Therefore, Petitioner's belated claim of ineffective assistance of counsel must be denied.

## IV. CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted, unless the petitioner "has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, (and the Court cannot independently discern), anything novel, noteworthy or worrisome about this case that warrants appellate review. It is therefore recommended that Petitioner should not be granted a COA in this matter.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. Petitioner should **NOT** be granted a Certificate of Appealability.

Dated: October 29, 2013         s/Arthur J. Boylan
                                ARTHUR J. BOYLAN
                                Chief United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before November 13, 2013.